This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40752**

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

      Petitioner-Appellee,

v.

**FRANCIS Y. a/k/a RUSSELL Y.,**

      Respondent-Appellant,

and

**BECKY B. a/k/a REBECCA B.,**

      Respondent,

**IN THE MATTER OF RAVEN Y. and
WINTER Y.,**

      Children.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY
Bradford J. Dalley, District Court Judge**

Children, Youth & Families Department
Mary E. McQueeney, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Assistant Children's Court Attorney
Albuquerque, NM

for Appellee

The Law Office of Nancy L. Simmons, P.C.
Nancy L. Simmons

Albuquerque, NM

for Appellant

Native American Disability Law Center
Heather Hoechst
Farmington, NM

Guardian Ad Litem for Raven Y.

Richard J. Austin PC
Richard J. Austin
Farmington, NM

Guardian Ad Litem for Winter Y.

**MEMORANDUM OPINION**

**BOGARDUS, Judge.**

**{1}** Father appeals from the district court's order adjudicating Children abused or neglected under the requirements of the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. § 1912(f). We issued a notice proposing to summarily affirm. Father responded to our notice with a memorandum in opposition, in which he complained about the inadequacy of the docketing statement and the summary calendar to address the errors in this case. We issued an order allowing appellate counsel an extension of time to obtain the audio recording of the adjudication hearing and file an amended memorandum in opposition. Appellate counsel has filed an amended memorandum in opposition. We have duly considered Father's amended memorandum in opposition and remain unpersuaded that the district court erred.

**{2}** Father contends for the first time in his responses to our notice: (1) the district court should not have permitted the ICWA expert to testify as to whether the continued custody of Children by Father is likely to result in serious emotional or physical damage to Children [AMIO 5-10]; and (2) the district court should not have based many of its findings on the testimony of the ICWA expert [AMIO 5, 11-12].

**{3}** New arguments raised in response to a calendar notice are treated as a motion to amend. *See* Rule 12-210(D)(2) NMRA (stating that "[t]he parties shall not argue issues that are not contained in either the docketing statement or the statement of the issues[,]" but permitting the appellant to move to amend the docketing statement upon good cause shown, which can be combined with a memorandum in opposition). In cases assigned to the summary calendar, this Court will grant a motion to amend the docketing statement to include additional issues if the motion: (1) is timely, (2) states all facts material to a consideration of the new issues sought to be raised, (3) explains how the issues were properly preserved or why they may be raised for the first time on

appeal, (4) demonstrates just cause by explaining why the issues were not originally raised in the docketing statement, and (5) complies in other respects with the appellate rules. *See State v. Rael*, 1983-NMCA-081, ¶¶ 7-8, 10-11, 14-17, 100 N.M. 193, 668 P.2d 309. This Court will deny motions to amend that raise issues that are not viable, even if they allege fundamental or jurisdictional error. *See State v. Moore*, 1989-NMCA-073, ¶¶ 36-51, 109 N.M. 119, 782 P.2d 91, *superseded by statute on other grounds as recognized in State v. Salgado*, 1991-NMCA-044, ¶ 2, 112 N.M. 537, 817 P.2d 730.

{4}     Father's amended memorandum in opposition asserts that Father's trial counsel objected to the district court's acceptance of Mr. Applegate as an ICWA expert, without referring to the record and without any description of the objection. [AMIO 7] As indicated above, we allowed appellate counsel an extension of time to listen to the audio recording of the adjudication hearing and file an amended memorandum in opposition. Appellate counsel refers to the tape log for her recitation of events. There is no clear objection in the tape log to Mr. Applegate's qualifications and no indication of the basis for any objection. [1 RP 225] A motion to amend the docketing statement is required to explain how the new issue was properly preserved. *See Rael*, 1983-NMCA-081, ¶¶ 7-8. This obligation applies with even greater force in a memorandum in opposition, especially where we have granted the appellant extra time to review the audio recording before filing an amended response to our notice. *See id.* ¶ 10 (stating that the requirement that appellants satisfy their burden to state all facts material to the consideration of the late-raised issue applies "with equal, if not greater, force to requests to amend docketing statements and to fulfill showings of good cause that would persuade us to allow any motion to amend").

{5}     Even assuming, however, that trial counsel generally objected to Mr. Applegate's qualifications as an ICWA expert, we see no specific objection to Mr. Applegate's testimony about whether Respondents' continued custody of Children is likely to result in serious emotional or physical damage to Children. Nor are we persuaded by Father's contention on appeal about this testimony. [AMIO 7-10] Mr. Applegate testified: he has a bachelor of science degree in human development and family dynamics and a post-graduate degree in early childhood education and child development; he spent all of his post-graduate degree working with Indian tribes and families in the foster care system; he has about fifteen years of experience serving Indian families, including four years with the Osage Nation; he has thirteen years of experience with state systems and children in foster care involving ICWA; he gets over twenty hours of ICWA training annually; he is employed as a child care specialist and supervisor, which requires him to have education, knowledge, and training in cases of abuse and neglect, physical, sexual, and substance abuse, domestic violence, and other topics common to Indian child welfare cases; he has testified as an ICWA expert over 350 times, offering his opinion about whether conditions in the home would cause serious emotional or physical harm to Children if returned; he has been involved in the current case for the five months preceding the adjudication hearing; he has been involved with communication between the parties; and he has reviewed all the documents relating to the parties and the hearings. [1 RP 224-26]

**{6}** Father does not seem to offer a specific reason why Mr. Applegate was unqualified to offer testimony as an ICWA expert, but he relies heavily on this Court's opinion in *State ex rel. Child., Youth & Fams. Dep't v. Douglas B.*, 2022-NMCA-028, ¶¶ 34-35, 511 P.3d 357, *cert. granted*, 2022-NMCERT-004 (S-1-SC-39139). We are neither persuaded that Mr. Applegate's qualifications are akin to those of the witness in *Douglas B.*, nor are we persuaded that the deficiencies of the witness's testimony in *Douglas B.* are present in Mr. Applegate's explanation of why his training, experience, personal experience, and knowledge of the case qualifies him to be an ICWA expert in this case.

**{7}** To the extent Father may be contending that Mr. Applegate was unqualified to offer an expert opinion on the emotional or physical harm that may come to Children if returned to Father because Mr. Applegate did not interview Children or Father [AMIO 11], we are not persuaded. Mr. Applegate's testimony shows that he was involved in the case for five months, checked in on Children, and was knowledgeable about the parties and proceedings. [1 RP 225-28] We are not persuaded that Father has presented a sufficiently preserved or viable issue. Thus, we deny the motion to amend to add this issue.

**{8}** Father also seeks to add the contention that Mr. Applegate's testimony exceeded his expertise and the district court should not have relied on his testimony for its findings on emotional damage, active efforts, or best interests, among others. [AMIO 11-12] There is no suggestion in Father's amended memorandum in opposition or in the record that Father objected to Mr. Applegate's testimony on grounds that it exceeded his expertise. Also, as reflected in the analysis in our notice, the district court's order contains seven pages of findings that adequately supported its own conclusions about active efforts, the abuse and neglect of Children, and Children's best interests, which did not rely on the opinion of Mr. Applegate, but on the testimony of other witnesses whom the district court expressly found credible. [2 RP 305-312 FOF 16-75] Because, as our notice indicates, there were sufficient findings to support its conclusions about active efforts, the abuse and neglect of Children, and Children's best interests without the opinions of Mr. Applegate, the district court's findings and conclusions related to Mr. Applegate's testimony on these subjects are surplusage and provide no grounds for reversal. *See Quarles v. Arcega*, 1992-NMCA-099, ¶ 21, 114 N.M. 502, 841 P.2d 550 ("Even if a finding of fact or conclusion is erroneous, if it is unnecessary to the court's decision, the mistake is not a basis for reversal." (internal quotation marks and citation omitted)); *Tome Land & Improvement Co. v. Silva*, 1973-NMSC-120, ¶ 18, 86 N.M. 87, 519 P.2d 1024 (holding that a finding, even if erroneous, was clearly immaterial and irrelevant and could be ignored as surplusage with the remaining findings and conclusions supporting the judgment).

**{9}** We also observe that Mr. Applegate's testimony about the culture and traditions of the Osage Nation, relative to the Children, Youth & Families Department's (CYFD) efforts, was offered in response to Respondents' contention that they could not let CYFD in their home to investigate because their culture and traditions do not permit that negativity in the home. [1 RP 227] As the ICWA expert, Mr. Applegate appears to be the

appropriate witness to address such matters in his testimony, explaining the culture and traditions of the Osage Nation around parenting and doing their best, regardless of how unfair things may feel. [1 RP 227-28] Further, as we explained above, Father does not persuade us that Mr. Applegate was unqualified to testify about Children's emotional and physical well-being if returned to the home.

{10} For these reasons, we are not persuaded that Father's arguments about the scope of Mr. Applegate's testimony and the district court's reliance on that testimony are viable or fully preserved. Accordingly, we deny the motion to amend to add this issue.

{11} In response to our notice, Father continues to challenge the sufficiency of the evidence to support the district court's conclusion that CYFD used active efforts to prevent the breakup of the Indian family. [AMIO 12-13] Father does not challenge our understanding of the evidence presented; instead, Father asserts that CYFD insisted that it would not provide family counseling until Father permitted CYFD to inspect the home, which Father believes wrongfully put the burden on Father to meet CYFD's demands before engaging in active efforts. [AMIO 12-13] This assertion ignores numerous findings of the district court relative to Respondents' long-standing efforts to evade child protective services; their actions that actively hindered CYFD investigations and discovery of their family needs; Respondents' denial of the need for any assistance; Father's refusal of all services; his refusal to obtain a meaningful evaluation of his own level of need or to accept any involvement and responsibility; and Father's refusal to attend treatment team meetings where he could learn about Children's conditions, needs, and treatment. [2 RP 310 FOF 59-63, 2 RP 311 FOF 66, 69-74]

{12} Father's contention also does not address our recitation of CYFD's efforts [2 RP 311 FOF 72-73; 2 RP 318 FOF 9], and the district court's findings that CYFD's active efforts were thwarted by Respondents' willful lack of insight and responsibility, refusal of services, obstructionist behavior, and recalcitrant attitude. [2 RP 307 FOF 38-40; 2 RP 308 FOF 44; 2 RP 310 FOF 61, 63; 2 RP 311 FOF 65-69, 74; 2 RP 312 FOF 75] An assessment of whether CYFD met its statutory obligation of active efforts is not dependent on "conditions unilaterally imposed by the parent." *State ex rel. Child., Youth & Fams. Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 27, 132 N.M. 299, 47 P.3d 859 ("CYFD is only required to make reasonable efforts, not efforts subject to conditions unilaterally imposed by the parent."). We are not persuaded by Father's argument that the district court erred by concluding that CYFD satisfied its burden of establishing active efforts under the circumstances.

{13} Lastly, Father's amended memorandum in opposition pursues his contention that insufficient evidence supports the conclusion that Children are abused and neglected. [AMIO 13-15] Father's response to our notice does not raise any new argument or point out any specific error in our proposed analysis. *See State v. Mondragon*, 1988-NMCA-027, ¶ 10, 107 N.M. 421, 759 P.2d 1003 (stating that "[a] party responding to a summary calendar notice must come forward and specifically point out errors of law and fact" and the repetition of earlier arguments does not fulfill this requirement), *superseded by statute on other grounds as stated in State v. Harris*, 2013-NMCA-031, ¶

3, 297 P.3d 374. Thus, we hold that the evidence was sufficient for the reasons stated in our notice of proposed disposition.

**{14}** Based on the foregoing analysis and the proposed analysis in our notice, we affirm the district court's order adjudicating Children abused or neglected.

**{15}  IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**GERALD E. BACA, Judge**